Agueda Capó Vázquez, Plaintiff and Appellant, *v.* Santiago A. Panzardi & Co., *S. en C.*, et al., Defendants and Appellees.

No. 5847. Argued December 6, 1932.—Decided December 14, 1932.

*F. Colón Díaz* for appellant. *Tous Soto* and *Zapater* for appellee Santiago A. Panzardi & Co., *S. en C.*

Mr. Chief Justice Del Toro delivered the opinion of the Court.

Santiago A. Panzardi & Co., *S. en C.*, filed an action for debt against René Cintrón Parra and levied an attachment on an Oldsmobile automobile, license No. 4707, as belonging to the defendant. Thereupon Agueda Capó Vázquez filed this suit against Panzardi claiming that she owned the said automobile. Panzardi answered and alleged that Cintrón was the real owner of the said automobile inasmuch as the transfers made by Cintrón to his wife, Carmen Capó Vázquez, and by the latter to her sister Agueda, the claimant, were both simulated.

The case was tried and at the trial both parties presented considerable evidence. The court rendered a judgment for defendant, with costs but without including attorney's fees.

The plaintiff appealed. In her brief she assigns six errors.

The first of these is that the court admitted the testimony of René Cintrón regarding transactions that were not pertinent to this case.

In our opinion such error is nonexistent. The defendant who produced the witness explained that the testimony did in fact refer to different transactions, which, being coetaneous with those involved in this case, revealed a common purpose to defraud the creditor, and therefore that it was admissible as circumstantial evidence to prove the fraud, citing subdivision 13, section 35, of the Law of Evidence. It was on such basis that the evidence was admitted.

After the testimony was heard the plaintiff moved to strike it on the ground that the same constituted parol evidence regarding contracts in writing. The court refused to strike the testimony and this refusal is assigned as a second error.

Panzardi, who was not a party to the contracts, questioned René Cintrón, a party thereto, regarding the circumstances surrounding their execution. This was not error. In the case of *Nicorelli* v. *López,* 26 P.R.R. 49, this Court said:

"While oral evidence is not admissible to contradict, vary, add to or take from the terms of a valid document, this rule is not applicable when the controversy is between one of the parties to the contract and another person who is not a party thereto nor interested therein."

Furthermore, as has hereinbefore been stated, in this case a common purpose to defraud is sought to be proved and therefore the case falls within one of the exceptions to the rule invoked by the appellant.

In *Morales* v. *Franco, ante,* p. 63, this Court speaking through Mr. Justice Hutchison said:

"This is not the typical case of a party, who, by parol evidence, seeks to vary the terms of a written contract upon the mere pretext that he did not read it. It is a case of deliberate misrepresentation and fraud well established, not only by the testimony of plaintiff, but also by all the circumstances surrounding the transaction."

The remaining four errors assigned should be considered together. The appellant contends that the court erred in holding: (1) That inasmuch as there had been no delivery of the automobile the sale had not been consumated; (2) that there was no consideration for the sale and that the same was in fraud of creditors; (3) that a donation was made by the husband to the wife, which was void according to law; and (4) that the evidence was highly conflicting and that the conflict should be adjusted against the plaintiff.

In support of its judgment the district court stated in part as follows:

"The evidence as to who was the real owner of the automobile, when it was attached by the Marshal of the Municipal Court, has been highly conflicting, for, while plaintiff Agueda Capó and her witnesses have testified that on the date of the attachment (June 21, 1930) the claimed automobile was in her possession, the witnesses

for the defendant testified that the said automobile was in the possession and under the control of defendant René Cintrón up to the date of the attachment by the Marshal, June 21, 1930. The witnesses who testified for the plaintiff were the plaintiff herself, her sister, Carmen Capó Vázquez de Cintrón, her brother-in-law René Cintrón, and the latter's cousin, José Sánchez Parra. All the witnesses who testified for the defendant, with the exception of its manager Joaquín Pou, Jr., are people who have no apparent interest in the case. The court finds that the preponderance of the evidence is in favor of the defendant and settles the conflict in the evidence accordingly. (Section 162 No. 5 of the Law of Evidence.) From all the evidence introduced by the parties, considered as a whole, it appears to have been proved that there was no transfer or sale of the automobile to Agueda Capó Vázquez, inasmuch as there was no delivery of the automobile and for this reason the sale was never consummated; in order that the sale of personal property may be consummated, there must be a delivery of the object sold. (Sections 1364, 1365, and 1366 of the Civil Code.) If such sale was made to Agueda Capó Vázquez, it was made without consideration or value and in fraud of creditors. (Section 1264 of the Civil Code; *Santini Fertilizer Co.* v. *Burgos et al.*, 34 P.R.R. 830.) If a donation was made by René Cintrón to his wife Carmen Capó, such donation is void according to section 1301 of the Civil Code; and since the donee's title was void she could pass no valid title to Agueda Capó.''

It is contended by appellant that the court failed to apply section 1352 of the Civil Code, 1930 ed., inasmuch as delivery of personal property may also be made by the delivery of the keys of the place where the same is stored or kept. The court not only mentioned section 1351 (1930 ed.), which reads: ''the thing sold shall be considered as delivered when it is placed in the hands and possession of the vendee,'' but also section 1352 (1930 ed.). Weighing all the evidence, including that referring to the key, the court reached the conclusion that no delivery had been shown.

The appellant, in her brief, in discussing the question as to the gift from the husband to the wife, asserts that there was no such gift.

René Cintrón testified as follows:

"Q. Was it not on July 2, 1928, that you transferred to your wife the license that was issued to you by the Department of the Interior on May 7, 1928?—A. Yes sir.—Q. Was it then that you transferred the said automobile to your wife?—A. Yes.—Q. What was the price?—A. What was what?—Q. How much did your wife pay you?—A. How much did she pay me? She paid me nothing. It was a gift that I made to her; I wanted to please her that way."

Notwithstanding the finality and definiteness of this testimony, the appellant insists that the transfer of the license does not constitute a gift of the automobile. She maintains that the same continued to be the property of the conjugal partnership.

Since this conclusion standing alone may be prejudicial to her, the appellant adds that the sale of the automobile was made by the conjugal partnership through the wife, in the presence and with the consent of the husband, inasmuch as the license was already in her name. She refers to pages 115 and 116 of the transcript of the evidence. Therein the testimony of the husband appears as follows:

"Was Agueda Capó at your house on June 17, 1930?—A. She was at my house.—Q. Did anything take place between you two?— A. Yes. The transfer that was made by my wife personally to Agueda Capó. . . .—Q. Did you see this done, personally?—A. Yes.—Q. Were you present?—A. I was present.—Q. What was said there?—A. She said, she explained to me, that she was indebted to her sister and couldn't pay.—Q. Were you present there?— A. Yes, I was present . . . she, my sister-in-law gave my wife $300 in bills; my wife signed the license and transferred it and then my sister-in-law did the rest.—Plaintiff:—Q. Did you see the delivery of the money?—A. Yes, sir, I saw it."

The husband made a gift. Could he do it? He could not, according to section 1286 of the Civil Code, (1930 ed.), which provides:

"Section 1286.—All gifts between spouses bestowed during the marriage shall be void.

"Moderate gifts which spouses bestow on each other on festive days for the family are not included in this rule."

Manresa in his commentaries on section 1356 of the Civil Code of Spain, equivalent to section 1286 of our code, analyzes the origin and the reason for said section. He does this with his usual ability and clarity, and concludes as follows:

"Gifts between spouses, are, therefore, void as a general rule. This means that legally they do not exist. It is not, in our opinion, an act that is voidable at the option of the donor, but a nonexistent act, since to hold otherwise would be equivalent to making a compliance with the law depend upon the choice of the same spouses who violate it; validating gifts that are forbidden but that are not attacked within four years. This would be absurd." Manresa, Commentaries on the Civil Code, vol. 9, p. 267.

If, in the light of the evidence presented, the gift involved herein was not a moderate gift which, according to his financial conditions, the husband could make to his wife, then its legal existence can not be recognized and it is clear that she could not sell the automobile to her sister. The sale was not made by the wife in behalf of the conjugal partnership, but by the wife in her own behalf and acting independently. We know what the husband testified. Let us see now what the plaintiff herself stated:

"My sister Carmen was in need of $200 and she came to my house in San Germán to ask my mother to lend it to her. My mother told her at the moment 'I have no money; Agueda is the only one here who has money.' Then my sister Carmen said to me: 'Have you any money you wish to lend me for some necessities?' I said to her: 'I have some money that I have saved, but I am saving it to take a trip.' Then I took the $200 and I lent it to her and I gave it to her; I brought it and after counting it I gave it to her; I gave her $200 in some coins and bills. Subsequently, as you know, I was saving this money for a trip, and I came to Ponce to get that money as I needed it, and then she told me that she did not have the money. . . . After I came—I came to Ponce, my mind made up to purchase the automobile—I said to my sister—I brought her the $300 and I told her that I accepted the purchase of the car; then on June 17, I handed her the three hundred dollars and she transferred the automobile to me."

But even accepting that the sale to plaintiff might have been made by the conjugal partnership, we know that the district court, after weighing the evidence, found that the sale was illegal because it was simulated and in fraud of creditors, and, considering this evidence, we do not feel justified in disturbing the conclusion of that court which was in a better position than we are to pass upon the credibility of the witnesses.

The judgment appealed from must be affirmed.